## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| LDK SOLAR SYSTEMS, INC., et al.,[1] | Case No. 14-12384 (___) |
| Debtors. | Joint Administration Requested |

### MOTION OF THE DEBTORS FOR AN ORDER (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION EMPLOYEE OBLIGATIONS, (II) AUTHORIZING THE DEBTORS TO REIMBURSE BUSINESS EXPENSES, (III) AUTHORIZING THE DEBTORS TO MAINTAIN AND CONTINUE EMPLOYEE BENEFITS AND PROGRAMS IN THEIR ORDINARY COURSE, (IV) AUTHORIZING AND DIRECTING APPLICABLE BANKS TO HONOR ALL CHECKS AND TRANSFERS DRAWN ON THE DEBTORS' ACCOUNTS, AND (V) GRANTING RELATED RELIEF

LDK Solar Systems, Inc. and its affiliated debtors and debtors in possession (each a "Debtor" and, collectively, the "Debtors") in the above-captioned chapter 11 cases (these "Chapter 11 Cases") file this motion (this "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Wage Order"), pursuant to sections 105(a), 363(b), 507(a)(4), and 507(a)(5) of title 11 of the United States Code (the "Bankruptcy Code"), authorizing, but not directing, the Debtors, in accordance with their stated policies, to (a) pay all prepetition wages, salaries, and other compensation owed to the Employees (as defined below), subject to a cap of $12,475 per individual; (b) reimburse all prepetition business expenses to the Employees; (c) make all payments for which prepetition payroll and tax deductions were made; (d) honor prepetition obligations under certain employee benefit programs, and continue such programs in the ordinary course; (e) continue workers' compensation obligations; (f) make all payments to third parties relating to the foregoing payments and contributions; and (g) authorizing applicable banks and other financial institutions to honor and pay all checks and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: LDK Solar Systems, Inc. (2944); LDK Solar USA, Inc. (0488); and LDK Solar Tech USA, Inc. (3978). The mailing address for each Debtor is 1290 Oakmead Parkway, Suite 306, Sunnyvale, California 94805.

transfers drawn on the Debtors' payroll account to make the foregoing payments.  In support of this Motion, the Debtors rely upon the *Declaration of Jack Kun-Shen Lai in Support of First Day Motions* (the "Lai Declaration") and the *Declaration of Tammy Fu in Support of Chapter 11 Petitions* (the "JPL Declaration"), both filed concurrently herewith.  In further support of this Motion, the Debtors respectfully state as follows:

## STATUS OF THE CASE AND JURISDICTION

1.     On October 21, 2014 (the "Petition Date"), each of the Debtors commenced these Chapter 11 Cases by filing voluntary petitions with this Court for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.   As of this date, no trustee, examiner or statutory committee has been appointed in these Chapter 11 Cases.

2.     Concurrently with this Motion, the Debtors have also filed motions and applications seeking certain "first day" relief.  Also on the Petition Date, the Debtors filed with this Court (A) *the Joint Prepackaged Plan of Reorganization for LDK Solar Systems, Inc., LDK Solar USA, Inc. and LDK Solar Tech USA, Inc.*, dated as of September 17, 2014 (the "Plan"), (B) the *Disclosure Statement in Connection with the Joint Prepackaged Plan of Reorganization for LDK Solar Systems, Inc., LDK Solar USA, Inc. and LDK Solar Tech USA, Inc.*, dated September 17, 2014 (the "Disclosure Statement"), and (C) the *Motion of the Debtors for an Order (I) Scheduling Objection Deadline and Combined Hearing on (A) Disclosure Statement; (B) Confirmation Of Plan; (C) Approving Solicitation Procedures; (II) Shortening Certain Deadlines in Connection Therewith; (III) Approving Form And Manner of Notice Of Combined Hearing On Disclosure Statement, Confirmation of Plan and Solicitation Procedures; (IV) Establishing Procedures For Objecting To The Disclosure Statement And Plan; (V)Waiving the*

*Requirements For (A) Convening a Meeting of Creditors and (B) Filing Schedules of Assets and Liabilities and Statements of Financial Affairs; and (VI) Granting Related Relief* (the "Scheduling Motion").  The Debtors have also filed a motion for entry of an order directing the joint administration of these Chapter 11 Cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

3.     In addition, on the Petition Date, the Debtors' ultimate parent company, LDK Solar CO., Ltd. (in provisional liquidation) ("LDK Parent"), commenced a case under chapter 15 of the Bankruptcy Code (the "Chapter 15 Case") by filing a petition with this Court for recognition of its Cayman Islands provisional liquidation as a foreign main proceeding under section 1515 of the Bankruptcy Code.

4.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).[2]

5.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.     The statutory and legal predicates for the relief requested herein are sections 105(a), 363(b), 507(a)(4), and 507(a)(5) of the Bankruptcy Code.

## BACKGROUND OF THE DEBTORS

7.     LDK Parent is the ultimate parent of the LDK Solar group of companies (the "Group"), which includes a large number of intermediate holding and operating companies in the People's Republic of China (the "PRC"), Hong Kong, Europe and North America.  The

---

[2] The Debtors consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

business of the Group is to manufacture and sell a variety of photovoltaic ("PV") products used in the production of solar-generated electrical power. Specifically, the Group produces polysilicon, mono- and multicrystalline ingots, wafers, cells, modules, systems, power projects and solutions, which, in turn, facilitate the production of solar panels by the Group and other down-stream customers. As of September 30, 2014, the Group had 8,381 employees.

8. LDK Parent is currently subject to a provisional liquidation under Part V of the Cayman Islands Companies Law (2013 Revision) (the "Cayman Proceeding") in the Grand Court of the Cayman Islands, Financial Services Division (the "Cayman Court"). On February 27, 2014, the Cayman Court granted LDK Parent's application for an order (the "Cayman Order") appointing Eleanor Fisher and Tammy Fu, both partners of Zolfo Cooper (Cayman) Limited, as the joint provisional liquidators of LDK Parent (the "JPLs"). Among other things, the Cayman Order (i) jointly and severally authorizes the JPLs to exercise substantial authority and control over the operations of LDK Parent and (ii) suspends virtually all of the powers of the Board of Directors of LDK Parent.[3] As a result, since the appointment of the JPLs, LDK Parent's management and operations have primarily been conducted from the Cayman Islands by the JPLs.

9. Headquartered in Sunnyvale, California, Debtor LDK Solar USA, Inc. is the direct parent of Debtor LDK Solar Tech USA, Inc. and holds an 80% ownership stake in Debtor LDK Solar Systems, Inc.[4] LDK Solar USA, Inc.'s business activities include supervision, administration, finance and human resources functions for the Debtors and certain non-debtor affiliates in connection with the Group's United States operations. Historically, LDK

---

[3] The Cayman Order suspended the powers of the Board of Directors of LDK Parent except for the residual power to instruct attorneys to appear on behalf of LDK Parent at certain proceedings before the Cayman Court.

[4] LDK Parent and LDK Silicon & Chemical Technology Co., Ltd. together own the remaining 20% of LDK Solar Systems, Inc.

Solar Tech USA, Inc. ("LDK Solar Tech") was the only operating Debtor, with its main business being the sales and marketing of the Group's solar panels in North American markets. Due to certain external factors, including certain anti-dumping and duty policies of the United States Department of Commerce, LDK Solar Tech's business contracted significantly, and LDK Solar Tech eventually ceased operations. As a result, the last employee of LDK Solar Tech left the company in April 2014, and LDK Solar Tech is not currently operating.

10. Because the Debtors' operations consist of various supervisory and administrative functions in connection with the Group's United States operations, the Debtors do not generate any direct income from third parties. Rather, the Debtors' sole source of revenue is monthly service payments from LDK Solar International Co., Ltd. ("LDK International"), a subsidiary of LDK Parent that serves as the primary treasury function between the Group's operations in PRC (the "Onshore Operations") and the Group's operations outside of the PRC, in Asia, Europe and the United States (the "Offshore Operations"). These monthly service payments consist of the monthly costs associated with the Debtors providing the Group with services in the United States, including employee-associated costs, plus an additional fee of approximately 5%.

11. Additional information regarding the Debtors, their affiliates, their respective assets and operations and these Chapter 11 Cases is set forth in the Lai Declaration. Additional information concerning LDK Parent and its global restructuring is set forth in the JPL Declaration. The Lai Declaration and JPL Declaration are incorporated herein by reference.

**RELIEF REQUESTED**

12. Prior to the significant decline in the Debtors' business and operations described above and in the Disclosure Statement, the Debtors maintained a sophisticated and elaborate compensation and benefits system for its many employees. However, as described

below, as of the Petition Date, there are only four (4) individuals remaining that are compensated by the Debtors and participate in the Debtors' benefit plans (the "Employees").[5] Two of the Employees are directly employed by the Debtors and only provide services to other affiliates within the Group structure as is required in their capacities as Debtor Employees performing services in connection with the Group's Offshore Operations. The remaining two individuals have employment agreements with LDK Parent and provide services to both LDK Parent and the Debtors in connection with the Debtors' role in the Group's Offshore Operations. However, pursuant to the terms of such individuals' employment agreements, they are paid by Debtor LDK Solar USA, Inc. and entitled to participate in the Debtors' benefit programs described herein.

13. Given the small number of Employees overseeing the operations of the Debtors, each of the Employees provide a variety of critical functions for the Debtors, including providing management services, administrative, accounting, supervisory and other management functions in support of the Company's Offshore Operations in the United States. The Employees' skills, knowledge, and understanding of the Debtors' businesses are one of the Debtors' most valuable assets. Without the continued services of the Employees, an effective reorganization of the Debtors will not be possible.

14. Despite the decrease in the number of Employees, the Debtors, in an effort to maintain normal business operations and provide flexibility in the event that the Debtors increase business operations following the Chapter 11 Cases, have maintained their longstanding compensation and benefit structures. To minimize the personal hardship that the Employees would suffer if prepetition employee-related obligations are not paid when due or as expected, as well as to maintain morale of these essential Employees during this critical time, the Debtors, by

---

[5] In addition, Mr. Xingxue Tong was appointed as CEO of Debtor LDK Solar USA, Inc. on September 2, 2014. As of the Petition Date, Mr. Tong has an employment agreement with LDK Parent, and LDK Parent provides all salary and benefits to Mr. Tong. As a result, the terms of Mr. Tong's employment are not subject to this Motion.

this Motion, seek authority, in accordance with their stated policies and normal operating procedures, to: (a) pay all prepetition wages, salaries, commissions, and other compensation owed to the Debtors' Employees, subject to the Cap; (b) reimburse all prepetition business expenses to Employees; (c) make all payments for which prepetition payroll and tax deductions were made; (d) honor prepetition obligations under certain employee benefit programs, and continue such programs in the ordinary course; and (e) make all payments to third parties relating to the foregoing payments and contributions. The Debtors further seek an order authorizing and directing applicable banks and other financial institutions to honor and pay all checks and transfers drawn on the Debtors' payroll account to make the foregoing payments (collectively, and as more fully described below, the "Employee Wages and Benefits"). In addition, the Debtors request the right to modify, change and discontinue any of the Employee Wages and Benefits, and the policies related to reimbursable expenses, and to implement new Employee Wages and Benefits programs in the ordinary course of business during these Chapter 11 Cases in their sole discretion without the need for further Court approval.

## I. PREPETITION EMPLOYEE OBLIGATIONS

15. The Debtors' obligations for Wages, Reimbursable Expenses, Payroll Taxes and Deductions are described below:

a. **_Wages._** The Debtors' average gross monthly expenditure for their Employees' wages and salaries is approximately $65,000 ("Wages"). The payroll payments are made by direct deposit through electronic transfer of funds directly to the Employees, and each of the Employees is paid by Debtor LDK Solar USA, Inc.[6] As of the Petition Date, the aggregate amount of accrued wages, salaries, commissions and other compensation (excluding the Payroll Taxes and Deductions (each as defined below))

---

[6] The Employees are paid on a semi-monthly basis (the "Pay Date"). Wages are handled with the assistance of a third-party payroll processer, ADP, LLC ("ADP"). The Debtors process payroll primarily through one (1) master payroll account (the "Payroll Account") located at Chinatrust Bank USA ("CTBC Bank"). Typically, the payroll account maintains a $0 balance. Upon a request from ADP, LDK Solar USA, Inc. transfers sufficient funds from its checking account into the payroll account in order to process direct deposits for Employees.

earned prior to the Petition Date that remains unpaid to the Debtors' Employees is approximately $3,880.00 (the "Unpaid Wages").[7]

b. **Reimbursement of Prepetition Employee Business Expenses.** Prior to the Petition Date, and in the ordinary course of their businesses, the Debtors directly or indirectly reimbursed Employees for certain expenses incurred on behalf of the Debtors in the scope of their employment (the "Reimbursable Expenses"). The Reimbursable Expenses are expenses for ground transportation, air travel, lodging, meals, and other business-related expenses, and are incurred on the Debtors' behalf.[8] As of the Petition Date, the Debtors do not believe they owe any Reimbursable Expenses to the Employees.

c. **Prepetition Withholdings.** The Debtors are required by law to withhold from an Employee's wages amounts related to, among other things, federal, state and local income taxes, and social security and Medicare taxes (collectively, the "Withheld Amounts") for remittance to the appropriate federal, state or local taxing authorities. The Debtors must then match from their own funds for social security and Medicare taxes and pay, based upon a percentage of gross payroll, additional amounts for state and federal unemployment insurance (the "Employer Payroll Taxes," and together with the Withheld Amounts, the "Payroll Taxes"). The Debtors' current monthly obligations on account of Payroll Taxes total approximately $21,000, which are deposited each month into LDK Solar USA, Inc's designated Payroll Account.[9] As of the Petition Date, the Debtors estimate that the amount of accrued and outstanding prepetition obligations with respect to the Payroll Taxes is approximately $3,950.00.

d. **Prepetition Deductions.** During each pay period, the Debtors routinely deduct certain amounts from Employees' paychecks, including, as applicable and without limitation, pre-tax deductions payable to certain of the Specified Employee Benefits (as defined below), such as health care benefits and 401(k) contributions (collectively, the "Deductions") and forward these amounts to various third-party recipients. On average, the Debtors have historically deducted approximately $4,820.00 in Deductions from the Employees' paychecks per month. As of the Petition Date, the Debtors estimate that the amount of accrued and outstanding Deductions was approximately $1,610.00.

---

[7] Because most of the Debtors' Employees are paid in arrears, as of the Petition Date, some of the Debtors' Employees have not been paid all of their prepetition wages.

[8] Reimbursable Expenses are incurred by Employees on behalf of the Debtors through use of personal funds or credit cards. After submission and approval of expense reports, such Employees are reimbursed through checks issued from LDK Solar USA, Inc.'s Primary Checking Account.

[9] The Debtors' Payroll Taxes are generally processed by ADP and forwarded to the appropriate federal, state or local taxing authorities at the same time Employee payroll checks are administered.

16.     By this Motion, the Debtors request the authority, but not direction, to (i) pay all Unpaid Wages to their Employees in the ordinary course of business, subject to the Cap;[10] (ii) pay all unpaid Reimbursable Expenses that accrued prepetition or relate to the prepetition period; (iii) honor and process the prepetition obligations with respect to the Payroll Taxes; and (iv) continue to honor and process obligations with respect to the Deductions on a postpetition basis and to forward any prepetition Deductions to the applicable third-party recipients as was routinely done prior to the Petition Date.

## II.     PREPETITION EMPLOYEE BENEFITS

17.     The Debtors provide their Employees, directly or indirectly, and in the ordinary course of business, with a number of employee benefits, including, but not limited to (a) health care programs; (b) employee saving plans; (c) vacation, sick, holiday and leave benefits; (d) life insurance benefits; and (e) certain additional benefits (collectively, the "Specified Employee Benefits").  Specifically, the Debtors provide the following benefits to their Employees:

   a. ***Health Care Programs.***  The Debtors offer programs to the Employees for medical, dental and vision care coverage (the "Health Care Program"). The Health Care Program is administered by Anthem Blue Cross, the trade name of Blue Cross of California ("Blue Cross").  The Debtors pay 100% of the premiums for participating Employees and 50% for participating Employee's family members.  Employees' contributions are deducted from Employees' paychecks.[11]  On average, the Debtors pay approximately $3,491.00 per month for the Health Care Program, of which approximately $686.68 is contributed by the Employees on account of family members.  The Debtors' average monthly administrative fees for the Health Care Programs total approximately $111.97 per month.  As of

---

[10] The Debtors have made careful inquiries and have taken diligent steps to ensure that none of their Employees are owed more than the $12,475 Cap – as the amount qualifying for priority under section 507(a)(4) of the Bankruptcy Code – for Unpaid Wages as of the Petition Date.  Accordingly, if this Motion is granted, the Debtors are confident that no Employee should be paid more than $12,475 for such Unpaid Wages.

[11] The Health Care Program generally consists of (i) medical coverage provided through the PPO plan administered by Blue Cross; (ii) a dental plan administered by Blue Cross and (iii) a vision plan administered by Blue Cross.

the Petition Date, the Debtors had paid all premiums for the Health Plan through November 1, 2014.[12]

**b. *Vacation, Sick, Holiday, and Leave Benefits.*** The Debtors provide for flexible paid time-off to their Employees to use for vacation or sick leave (the "PTO Time").[13] In addition, the Debtors also provide paid holidays for all Employees ("Holiday Pay"),[14] and additional leave policies on a case-by-case basis to their employees based on need for up to five (5) days per year (the "Additional Leave Policies" and, together with the PTO Time and Holiday Pay, the "Leave Pay"). The annual cost to the Debtors for Leave Pay is approximately $15,825[15], and, with the exception of accrued but unused PTO Time, the cost of the Leave Pay programs are included in the Debtors' gross payroll. Accordingly, with the exception of amounts owing in connection with accrued but unused vacation time, all prepetition amounts related to the Leave Pay should be included in the "Unpaid Wages" total set forth above.

**c. *Employee Savings Plans***. Prior to the Petition Date, and in the ordinary course of business, the Debtors maintained one 401(k) plan for the benefit of their Employees (the "401(k) Plan"), which is administered by ADP.[16] The Employees' contributions to the 401(k) Plan total approximately $4,809.32 per month. In addition, the Debtors provide a matching policy, whereby the Debtors will match 100% of the first 4% of an Employee's contribution to the 401(k) Plan. No matching contributions have accrued prior to the Petition Date.

**d. *Severance Plan***. The Debtors provide a severance plan (the "Severance Plan") applicable to all full-time Employees in the event their employment is terminated by the Debtors other than for cause or the employee

---

[12] If an Employee chooses to opt out of the Health Care Program, the Debtors offer a reimbursement of $500 per month, which is paid on the Pay Date in connection with the normal Wages. Currently, two (2) Employees have elected to receive the $500 per month payment.

[13] Generally, Employees are provided fifteen (15) days of PTO time per year on an accrual basis during their first year of employment. Thereafter, Employees gain an additional one (1) day of PTO Time for each year of additional employment. When used, Employees are generally paid for PTO Time at their regular salaried rates. In the event an Employee has not used all available PTO Time by the end of the fiscal year, the Employee will carry over the balance of any remaining PTO Time to the following year, provided that the total number of accrued and unused PTO Time does not exceed twenty (20) days.

[14] Employees are entitled to ten (10) paid holidays per calendar year.

[15] This figure is based on each Employee taking an average of five (5) PTO days per year.

[16] Employees with at least six (6) months of employment are eligible to participate in the 401(k) Plan. The 401(k) Plan generally provides for pre-tax salary deductions of eligible compensation, which amounts are generally deducted automatically from each participating Employee's paycheck. Three of the Employees currently participate in the 401(k) Plan. Participating Employees may elect to contribute pre-tax from 1.0% to 80% of their compensation up to the amounts specified under the Internal Revenue Code ("IRC"). Generally, administrative fees are paid directly by the Debtors to ADP.

voluntarily terminates his or her employment for "good reason" as provided in the Employees' employment agreement.  Under the Severance Plan, the Employee receives a severance benefit equal to the rate of the Employee's base salary as of termination for a period of three (3) months to be paid periodically in accordance with the Company's normal payroll policies.  The Severance Plan also applies in the event of the Employee's death or disability.  As of the Petition Date, there are no Employees receiving Severance Pay under the Severance Plan.[17]

e. ***Additional Employee Benefits.***[18]  The Debtors also provide some or all Employees with (i) company-paid term life insurance ("Life Insurance")[19] which costs the Debtors approximately $96 per month; and (ii) a company automobile (the "Company Automobile") to assist LDK Solar USA, Inc.'s Chief Financial Officer and Board Director, Jack Lai, in performing his duties in support of the Debtors' businesses, which costs the Debtors approximately $970.27 per month.[20]

18. By this Motion, the Debtors also seek authority, but not direction, to continue to provide the Specified Employee Benefits in the ordinary course of business and continue to honor obligations under such Specified Employee Benefits post-petition, including any Severance obligations that may come due postpetition with respect to any Employees terminated during these Chapter 11 Cases (the "Certain Severance Obligations").  A hearing with respect to the relief requested in connection with the Severance Plan shall be held on the date and at the time set forth in the Proposed Wage Order, and parties shall be given an opportunity to

---

[17] To the extent that the Severance Plan provides benefits to individuals that are "insiders" of the Debtors within the meaning of section 101(31) of the Bankruptcy Code, this Motion does not seek authority to pay any such amounts to the extent that they exceed 10 times the amount of mean severance pay given to non-management Employees during the calendar year in which the payment is made.  See 11 U.S.C. 503(c)(2)(B).

[18] In addition to the additional Employee benefits described below, Employees are also eligible for an Annual Variable Incentive Bonus Compensation ("Incentive Bonus").  The Incentive Bonus is based on two elements (1) the Debtors' financial performance during the year and (2) the Employee's individual performance goals during the year.  Because the Incentive Bonus is not paid until the next regularly scheduled payroll following the end of the year for which the Incentive Bonus is awarded, the Debtors are not seeking authority to pay the Incentive Bonus at this time.

[19] Coverage under the Life Insurance entitles the Employee's beneficiary to receive an amount equal to $25,000 per employee.  As of the Petition Date, the Debtors believe that all amounts due for Life Insurance under the Health Program have been paid.

[20] The Debtors estimate that an aggregate of $25,000 remains unpaid to Chase Auto Finance ("Chase Auto") as of the Petition Date on account of the Company Automobile.

object as set forth in the Proposed Wage Order.  A proposed order with respect to the relief requested in connection with the Severance Plan is attached hereto as Exhibit B.

III.    WORKERS' COMPENSATION PROGRAM

19.    Under the laws of California, the Debtors are required to maintain workers' compensation policies and programs to provide Employees with compensation for injuries arising from or related to their employment with the Debtors.  The Debtors maintain a workers' compensation insurance policy (the "Workers' Compensation Policy") for all Employees with Farmers Insurance Exchange ("Farmers").  Under the terms of the Workers' Compensation Policy, the policy limits are $1,000,000 per accident and $1,000,000 per employee. As of the Petition Date, there are no workers' compensation claims pending against the Debtors.[21]

20.    Because the Workers' Compensation Policy is essential to the continued operation of the Debtors' businesses under the laws of California, the Debtors request authority to pay any and all prepetition amounts which may become due with respect to the Workers' Compensation Policy.  The Debtors further seek authority to maintain and continue their prepetition practices with respect to the Workers' Compensation Policy, including, among other things, maintaining insurance coverage and allowing workers' compensation claimants, to the extent they hold valid claims, to proceed with their claims under the Workers' Compensation Policy.

---

[21] The Debtors pay $3,374 annually for premiums and claims administration to Farmers under the Workers' Compensation Policy.  The Debtors renewed the Workers' Compensation Policy in April 2014 for coverage through June 25, 2015, and, therefore, no amounts under the Workers' Compensation Policy were due as of the Petition Date.

**AUTHORITY TO MAKE ALL PAYMENTS TO THIRD PARTIES
INCIDENT TO THE PAYMENTS AND CONTRIBUTIONS**

21.     The Debtors request authority to pay all costs incident to, among other items, the Employee Wages and Benefits, Unpaid Wages, Reimbursable Expenses, and the Payroll Taxes and Deductions, including other processing costs or administration costs ("Processing Costs").  The Debtors estimate that the aggregate amount of Processing Costs accrued but unpaid as of the Petition Date, including those costs referenced in specific sections above, is a *de minimis* amount (i.e., less than $5,000).  Payment of the Processing Costs is justified because the failure to pay any such amounts might disrupt the operation of third-party providers with respect to the services provided to Debtors.

**AUTHORITY FOR BANKS TO HONOR AND/OR REISSUE CHECKS**

22.     To implement all of the foregoing relief, the Debtors request that all applicable banks and financial institutions be authorized to receive, process, honor and pay any and all checks and transfers drawn on the Debtors' Payroll Account, whether such checks were presented before, or are presented after, the Petition Date.

23.     Accordingly, by this Motion, the Debtors seek (i) authorization for, and/or ratification of, their banks' honoring of prepetition payroll and employee benefit checks and transfers on or after the Petition Date; (ii) authorization for their banks to process and honor all other checks issued for payments approved by this Motion; and (iii) authorization to reissue checks for payments approved by this Motion, to the extent necessary.  The Debtors further request that the order approving this Motion provide that the banks and other financial institutions shall be entitled to rely on the representations of the Debtors as to which checks or payments are to be honored, processed and reissued in accordance with this Motion without any duty of further inquiry and without liability for following the Debtors' instructions.

## JUSTIFICATIONS FOR GRANTING REQUESTED RELIEF

24.     The Debtors seek the relief requested herein because any delay in paying any of the Employee-related wages, deductions, reimbursements and benefits described herein, could severely disrupt the Debtors' relationships with their Employees and irreparably impair the Employees' morale at the very time that their dedication, confidence, and cooperation are most critical.  The Debtors have commenced these Chapter 11 Cases in order to effect a brief, consensual restructuring of their long-term indebtedness with no impairment to holders of unsecured claims and minimal disruption to the Debtors' day-to-day business operations as part of the Group's overall global restructuring.  The Debtors simply cannot risk the substantial disruption of their business operations that would attend any decline in workforce morale attributable to the Debtors' failure to pay the Employee Wages and Benefits in the ordinary course of their businesses.

25.     If the relief requested herein is not granted, the Employees would suffer hardship and, in many instances, financial difficulties, since these monies are needed to enable them to meet their personal obligations.  In addition, without the requested relief, the Debtors' stability would be undermined by the potential threat that otherwise loyal Employees would seek other employment, negatively affecting the Debtors' consensual restructuring process.

## BASIS FOR RELIEF

26.     Pursuant to section 507(a)(4)(A) of the Bankruptcy Code, employee claims for "wages, salaries, or commissions, including vacation, severance, and sick leave pay" earned within 180 days before the Petition Date are afforded priority unsecured status to the extent of $12,475 per Employee.  Similarly, section 507(a)(5) of the Bankruptcy Code provides that Employees' claims for contributions to certain employee benefit plans also are afforded

priority unsecured status to the extent of $12,475 per Employee covered by such plan, less any amount paid pursuant to section 507(a)(4) of the Bankruptcy Code.

27. Furthermore, section 363(b)(1) of the Bankruptcy Code provides, in pertinent part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code further provides that the Court may issue any order "that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

28. The Debtors believe that the Employee-related obligations that they seek to pay are entitled to priority status under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code and do not exceed $12,475 per Employee. Moreover, the terms of the Plan provide that general unsecured claims are unimpaired and shall be reinstated on the Effective Date. The Debtors would therefore be required to pay these claims in full pursuant to the terms of the Plan and the Bankruptcy Code in order to confirm and implement their plan of reorganization. See Scheduling Motion (requesting that the Court schedule a time for the confirmation hearing); 11 U.S.C. § 1129(a)(9)(B) (requiring payment of certain allowed unsecured claims for wages, salaries, and commissions, and certain allowed unsecured claims for contributions to an employee benefit plan). Thus, granting the relief requested herein would only affect the timing, and not the amount, of the payment of such amounts, and should not prejudice the rights of general unsecured creditors or other parties in interest, particularly when considered in the context of the reinstatement in full (or alternative treatment as agreed upon between the Debtors and such creditors) afforded to general unsecured creditors under the Debtors' proposed prepackaged Plan.

29.     The Employees are essential to the orderly and successful reorganization of the Debtors.  The Debtors' Employees rely exclusively on their full compensation or reimbursement of their expenses (as applicable) in order to continue to pay their daily living expenses, and these individuals will be exposed to significant financial difficulties if the Debtors are not permitted to pay the unpaid Employee Wages and Benefits.  Any delay or failure to pay wages, salaries, benefits and other similar items would irreparably impair the Employees' morale, dedication, confidence, and cooperation, and would adversely impact the Debtors' relationship with the Employees at a time when the Employees' support is critical.

30.     On similar rationales, courts in this district have approved the payment of prepetition claims for wages, salaries, expenses, and benefits on the grounds that the payment of such claims was necessary to effectuate a successful reorganization.[22]

31.     In addition, certain of the funds the Debtors seek to pay are held specifically for the benefit of third parties.  For example, Payroll Taxes and the Deductions principally represent Employee earnings that governments (in the case of taxes) and Employees (in the case of voluntarily withheld amounts)  have designated for deduction from Employees' paychecks, and may not constitute property of the Debtors' estates in any event.  See, e.g., Begier v. IRS, 496 U.S. 53 (1990) (withholding taxes are property held by a debtor in trust for another and, as such, are not property of the debtor's estate); In re Am. Int'l Airways, Inc., 70 B.R. 102, 103 (Bankr. E.D. Pa. 1987) (excise and withholding taxes are "trust fund" taxes).  This

---

[22] See, e.g., In re Longview Power, LLC, No. 13-12211 (BLS) (Bankr. D. Del. Sept. 24, 2013); In re Conexant Sys., Inc., No. 13-10367 (MFW) (Bankr. D. Del. Mar. 1, 2013); In re Sch. Specialty, Inc., No. 13-10125 (KJC) (Bankr. D. Del. Jan. 30, 2013); In re Lee Enterprises, Inc., No. 11-13919 (KG) (Bankr. Dec. 13, 2011); In re Pliant Corp., No. 09-10443 (MFW) (Bankr. D. Del. Feb. 12, 2009); In re Smurfit Stone Container Corp., No. 09-10235 (BLS) (Bankr. D. Del. Jan. 29, 2009).

Court has previously exercised its equitable powers under section 105 of the Bankruptcy Code to authorize debtors to pay prepetition tax obligations.[23]

32.     In addition, maintaining the Workers' Compensation Policy is indisputably justified because applicable state law mandates this coverage.  It is therefore critical that the Debtors continue to maintain their Workers' Compensation Policy on an uninterrupted basis and be permitted to pay any prepetition obligations thereunder in the ordinary course of business, consistent with prepetition practices.

33.     Moreover, the Debtors believe it is necessary to continue payment of administrative fees to the various vendors that administer the Debtors' various benefit plans. Without the continued services of these administrators the Debtors will be unable to continue to honor their Employee Obligations and related Employee Benefits in an efficient and cost-effective manner.

34.     The requested relief is further supported by the prepackaged, consensual nature of these cases.  The votes tabulated and received from the class eligible to vote on the Plan demonstrate overwhelming acceptance of the Plan, and the holders of claims in the voting class have been involved for months in formulating the Debtors' global restructuring, which has always contemplated minimal effect on the Debtors' Employees and other categories of general unsecured claimants.  The most critical and complex tasks required to effectuate a successful reorganization, including the Plan and LDK Parent's scheme of arrangement under section 86 of the Cayman Islands Companies Law (2013 Revision), have already been accomplished.  Thus, given the backdrop of these Chapter 11 Cases, the relief requested herein is appropriate

---

[23] See, e.g., In re Penson Worldwide Inc., No. 13-10061 (PJW) (Bankr. D. Del. Jan. 15, 2013); In re THQ Inc., No. 12-13398 (MFW) (Bankr. D. Del. Jan. 11, 2013); In re Vertis Holdings, Inc., No. 12-12821 (CSS) (Bankr. D. Del. Nov. 1, 2012); In re Lee Enters., Inc., No. 11-13919 (KG) (Bankr. Dec. 13, 2011); In re Hilex Poly Co. LLC, Case No. 08-10890 (KJC) (Bankr. D. Del. May 7, 2008).

inasmuch as such relief will assist the Debtors to move toward expeditious confirmation of the widely-supported Plan and implementation of the Group's global restructuring with the least possible disruption or harm to their businesses. See, e.g., Lehigh and New Eng. Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981) (recognizing the necessity of paying certain prepetition claims that are essential to continued operation of the business); In re Columbia Gas Sys., Inc., 171 B.R. 189, 191-192 (Bankr. D. Del. 1994) (recognizing that debtors may pay prepetition claims that are essential to continued operation of a debtor's business); In re Just for Feet, 242 B.R. 821, 825 (D. Del. 1999) ("The Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11.").

35.     For the foregoing reasons, the Debtors believe that granting the relief requested herein is appropriate and in the best interests of their estates and creditors.

36.     The Debtors further submit that because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors, for the reasons set forth herein, Bankruptcy Rule 6003 has been satisfied.

37.     To the extent Fed. R. Bankr. P. 6004(h) is applicable to the Motion, the Debtors also seek a waiver of the fourteen-day stay under Fed. R. Bankr. P. 6004(h).

**RESERVATIONS OF RIGHTS**

38.     Nothing contained herein is intended or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or appropriate party in interest's rights to dispute any claim, or (iii) an approval or assumption of any agreement, contract, program, or policy under section 365 of the Bankruptcy Code. Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's

order is not intended and should not be construed as to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently. Finally, the relief requested herein shall not oblige the Debtors to accept any services, accept the shipment of goods, or prevent the Debtors from returning or rejecting goods.

### NOTICE

39.     Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney for the District of Delaware; (iv) the Internal Revenue Service; (v) the Debtors' largest unsecured creditors on a consolidated basis; (vi) the Debtors' third party administrators providing services in connection with the Employee Wages and Benefits; (vii) CTBC Bank; (viii) counsel to the JPLs; and (ix) counsel to the Consenting Noteholders. Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

### NO PRIOR REQUEST

40.     The Debtors have not previously sought the relief requested herein from this or any other court.

WHEREFORE, the Debtors respectfully seek entry of the Proposed Wage Order, in substantially the form of the order attached hereto, (i) authorizing, but not directing, the Debtors, in accordance with their stated policies, to: (a) pay all prepetition wages, salaries, and other compensation owed to the  Employees, subject to the Cap, where applicable; (b) pay and reimburse all prepetition business expenses to Employees; (c) make all payments for which prepetition payroll and tax deductions were made; (d) honor prepetition obligations under the Specified Employee Benefits where applicable, and continue such programs in the ordinary course; (e) honor workers' compensation obligations; (f) make all payments to third parties relating to the foregoing payments and contributions; and (g) authorizing applicable banks and other financial institutions to honor and pay all checks and transfers drawn on the Debtors' payroll accounts to make the foregoing payments.

[*Remainder of Page Left Intentionally Blank*]

Dated: Wilmington, Delaware
      October 21, 2014

SIDLEY AUSTIN LLP
Larry J. Nyhan
Jessica C.K. Boelter
Matthew G. Martinez
Geoffrey M. King
One South Dearborn Street
Chicago, Illinois 60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036

-and-

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Maris J.  Kandestin*
Robert S. Brady (No. 2847)
Edmon L. Morton (No. 3856)
Maris J. Kandestin (No. 5294)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253

PROPOSED  COUNSEL TO THE DEBTORS

# EXHIBIT A

## Proposed Wage Order

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| LDK SOLAR SYSTEMS, INC., <u>et al.</u>,[1] | Case No. 14- <u>12384</u> (___) |
| Debtors. | Jointly Administered |
| | **Re: Docket No. ___** |

**ORDER GRANTING DEBTORS' MOTION AND (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION EMPLOYEE OBLIGATIONS, (II) AUTHORIZING THE DEBTORS TO REIMBURSE BUSINESS EXPENSES, (III) AUTHORIZING THE DEBTORS TO MAINTAIN AND CONTINUE EMPLOYEE BENEFITS AND PROGRAMS IN THEIR ORDINARY COURSE, (IV) AUTHORIZING AND DIRECTING APPLICABLE BANKS TO HONOR ALL CHECKS AND TRANSFERS DRAWN ON THE DEBTORS' ACCOUNTS, AND (V) GRANTING RELATED RELIEF**

Upon the Motion[2] of the debtors and debtors in possession in the above-captioned cases (the "<u>Debtors</u>") for entry of an order: (i) authorizing, but not directing, the Debtors, in accordance with their stated policies, to: (a) pay all prepetition wages, salaries, and other compensation owed to the Employees, subject to the Cap; (b) pay and reimburse all prepetition business expenses to Employees; (c) make all payments for which prepetition payroll and tax deductions were made; (d) honor prepetition obligations under certain employee benefit programs and continue such programs in the ordinary course; (e) honor workers' compensation obligations; (f) make all payments to third parties relating to the foregoing payments and contributions; and (g) authorizing and directing applicable banks and other financial institutions to honor and pay all checks and transfers drawn on the Debtors' payroll accounts to make the foregoing payments; and upon consideration of the Motion and all pleadings related thereto,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: LDK Solar Systems, Inc. (2944); LDK Solar USA, Inc. (0488); and LDK Solar Tech USA, Inc. (3978). The mailing address for each Debtor is 1290 Oakmead Parkway, Suite 306, Sunnyvale, California 94805.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

including the Lai Declaration and the JPL Declaration; and due and proper notice of this Motion having been given; and it appearing that no other or further notice is required; and it appearing that the Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the relief requested is in the best interest of the Debtors, their estates, and creditors and after due deliberation, and sufficient cause appearing therefor, it is hereby

ORDERED, that the Motion is granted; and it is further

ORDERED, that the Debtors are authorized, but not directed, to continue to honor and pay in the ordinary course all prepetition amounts relating to (i) the Unpaid Wages, subject to the Cap; (ii) the Reimbursable Expenses; (iv) the Payroll Taxes; (v) the Deductions; (vi) the Specified Employee Benefits; (vii) the Workers' Compensation Policy; and (viii) the Processing Costs; and it is further

ORDERED, that the Debtors are authorized, but not directed, to continue to pay the Wages in the ordinary course and in accordance with their prepetition practices and policies; and it is further

ORDERED, that the Debtors are authorized, but not directed, to continue to pay all Reimbursable Expenses in accordance with their prepetition practices and policies; and it is further

ORDERED, that the Debtors are authorized, but not directed, to continue to allocate and distribute all Payroll Taxes and Deductions in accordance with the their prepetition practices and policies; and it is further

ORDERED, that the Debtors are authorized, but not directed, to continue to provide and pay for the Specified Employee Benefits in accordance with their prepetition policies and practices; and it is further

ORDERED, that the Debtors are authorized, but not directed, to continue to pay all obligations under the Workers' Compensation Policy; and it is further

ORDERED, that the Debtors are authorized, but not directed, to continue to make all payments in respect of Processing Costs, in accordance with their prepetition policies and practices; and it is further

ORDERED, that the Debtors are authorized to make all payments to third parties incident to, payment of the Employee Wages and Benefits and the Reimbursable Expenses; and it is

ORDERED, that the Debtors are authorized to modify, change and discontinue any of the Employee Wages and Benefits, and the policies related to Reimbursable Expenses, and to implement new Employee Wages and Benefits programs in the ordinary course of business during these Chapter 11 Cases in their sole discretion without the need for further Court approval; and it is further

ORDERED, that (i) the Debtors' banks are authorized to honor prepetition payroll and transfers on or after the Petition Date and, to the extent the bank may have honored any prepetition payroll checks prior to the Petition Date, such honoring is ratified, and (ii) the Debtors' banks and financial institutions are authorized to process and honor all other checks and

transfers issued for payments approved by this Order and/or reissue checks for any payments approved by this Order as needed; and it is further

ORDERED, nothing in the Motion or this Order shall be construed as impairing the Debtors' right to contest the validity or amount of any obligations related to the Employees, including, without limitation, Payroll Taxes that may be due to any taxing authority; and it is further

ORDERED, that nothing contained in the Motion or this Order shall be (i) deemed an admission as to the validity of any claim against the Debtors or a waiver of the Debtors' or appropriate party in interest's rights to dispute any claim; and it is further

ORDERED, that nothing in the Motion shall be deemed a request by the Debtors for authority to assume any executory contract pursuant to section 365 of the Bankruptcy Code; and it is further

ORDERED, that (i) the fourteen-day stay under Fed. R. Bankr. P. 6004(h) is hereby waived with respect to this Order and (ii) the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED, that a hearing with respect to the relief requested in the Motion in connection with the Employee Severance Plan shall be held on _____, 2014 at __: ___ _.m., with any objections to such relief to be filed with the Court by no later than _____, 2014, at __:____ _.m.; and it is further

ORDERED, that Rule 6003(b) of the Bankruptcy Rules has been satisfied because the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors; and it is further

ORDERED, that this Court shall retain jurisdiction with respect to all matters

arising from or related to the implementation of this Order.


Dated: _____, 2014                    _____
        Wilmington, Delaware                    UNITED STATES BANKRUPTCY JUDGE

## **EXHIBIT B**

## **Proposed Severance Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| LDK SOLAR SYSTEMS, INC., <u>et al.</u>,[1] | Case No. 14- 12384(___) |
| Debtors. | Jointly Administered |
| | **Re: Docket Nos.** ___ |

## ORDER AUTHORIZING CONTINUATION OF THE EMPLOYEE SEVERANCE PLAN
## IN THE ORDINARY COURSE OF BUSINESS

Upon the Motion[2] of the above-captioned Debtors for entry of an order

authorizing the Debtors, in accordance with their prepetition policies and practices to, among

other things, make all contributions to prepetition benefit programs and continue such

programs in the ordinary course of business, including the Employee Severance Plan (the "<u>Wage</u>

<u>Order</u>"); and upon consideration of the Motion and any and all responses or objections or other

pleadings related thereto, including the Lai Declaration and the JPL Declaration; and due and

proper notice of this Motion having been given; and it appearing that no other or further notice is

required; and it appearing that the Court has jurisdiction to consider the Motion in accordance

with 28 U.S.C.§§ 157 and 1334 and the *Amended Standing Order of Reference* from the United

States District Court for the District of Delaware, dated as of February 29, 2012; and it appearing

that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of

this proceeding and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it

appearing that the relief requested is in the best interest of the Debtors, their estates, and

creditors; and after due deliberation, and sufficient cause appearing therefor, it is hereby

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: LDK Solar Systems, Inc. (2944); LDK Solar USA, Inc. (0488); and LDK Solar Tech USA, Inc. (3978). The mailing address for each Debtor is 1290 Oakmead Parkway, Suite 306, Sunnyvale, California 94805.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

ORDERED, that the Motion is granted with respect to the relief requested in connection with the Severance Plan; and it is further

ORDERED, that the Debtors are authorized, in accordance with their prepetition policies and practices, to continue the Severance Plan in the ordinary course of business and to make any and all payments and contributions required thereunder in the ordinary course of business; and it is further

ORDERED, that no payments under the Severance Plan to the Employees are permitted pursuant to this Order in excess of the amount of the amount set forth in section 503(c)(2)(B) of the Bankruptcy Code; and it is further

ORDERED, that the Debtors' banks and financial institutions are authorized to process and honor all other checks and transfers issued for payments approved by this Order and/ or reissue checks for any payments approved by this Order where checks may be dishonored postpetition; and it is further

ORDERED, that this Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Wilmington, Delaware
Dated: _____, 2014

_____
United States Bankruptcy Judge